UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-267-RJC
(3:15-cr-251-RJC-DCK-1)

| | | |
|---|---|---|
| JAMES RONALD HELMS, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

I.  BACKGROUND

In April 2015, the FBI and local law enforcement agencies began investigating Petitioner James Ronald Helms, Jr., who was suspected of selling methamphetamine and cocaine out of his home in Monroe, North Carolina. (Crim. Case No. 3:15-cr-251-RJC-DCK-1, Doc. No. 16 at 2: Factual Basis). Two months later, a confidential informant bought 115 grams of cocaine from Petitioner for $6,600. (Id.). The transaction took place inside Petitioner's home. (Id.).

Based on this sale, officers obtained a search warrant and searched Petitioner's home, garage, and outhouse, seizing more than 2,000 grams of methamphetamine and 549 grams of cocaine. (Id.). At least 1,878 grams of methamphetamine was high-purity "Ice," and at least 41.1 grams was actual methamphetamine. (Id., Doc. No. 32 at ¶ 10: PSR). The methamphetamine and cocaine were stored, in preparation of sale and distribution, throughout the home. (Id., Doc. No. 16 at 2: Factual Basis). Officers also seized 13 firearms, including shotguns, assault rifles, pistols, and revolvers, and more than $47,000 in cash. (Id.).

1

Officers arrested Petitioner, who admitted that he was responsible for the drugs and the firearms and that the methamphetamine and cocaine were for distribution. (Id.). Petitioner told investigating agents that he began using methamphetamine in the 1990s while he was a member of the Outlaw motorcycle gang and that he and other members of the gang "began putting their money together and buying large quantities of methamphetamine." (Id., Doc. No. 32 at ¶ 11). Petitioner stated that he developed a Mexican source of supply and began dealing directly with a Hispanic man named Jose. (Id.). According to Petitioner, he had known Jose for about 20 years, and Jose sent members of his organization to Petitioner's house to drop off kilograms of cocaine and crystal methamphetamine. (Id.). Petitioner told investigators that he bought one kilogram of cocaine and one kilogram of crystal methamphetamine per month, paying $38,000 for the cocaine and $22,000 for the methamphetamine. (Id.). Petitioner stated that he had been storing large amounts of crystal methamphetamine at his house and that he limited how much crystal methamphetamine he sold to some customers because "some people cannot handle the drug." (Id.).

A grand jury indicted Petitioner, charging him with knowingly and intentionally conspiring "with other persons, known and unknown to the Grand Jury," to possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846 (Count One); possession with intent to distribute methamphetamine and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Two); possession of a firearm in furtherance of a drug-trafficking offense and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c), 2 (Count Three); knowingly and intentionally conspiring and agreeing "with other persons, known and unknown to the Grand Jury" to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846 (Count Four); and

possession with intent to distribute 500 grams or more of cocaine and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Five). (Crim. Case No. 3:15-cr-251-RJC-DCK-1, Doc. No. 1: Indictment). Five months later, Petitioner agreed to plead guilty to the two conspiracy charges (Counts One and Four). (Id., Doc. No. 15: Plea Agrmt.).

As part of the plea agreement, the Government agreed to dismiss the remaining charges. (Id. at ¶ 2). The parties jointly recommended that the two-level enhancement for possession of a dangerous weapon applied and that Petitioner's guilty plea was timely for purposes of acceptance of responsibility. (Id. at ¶ 7). Petitioner also agreed that he had read and understood the factual basis and that it could be used to determine his sentence. (Id. at ¶ 14). Pursuant to the plea agreement, Petitioner waived the right to contest his conviction and sentence on direct appeal and in any post-conviction proceeding, except as to claims of ineffective assistance or prosecutorial misconduct. (Id. at ¶¶ 18-19).

At the plea hearing, the magistrate judge reviewed the charges with Petitioner, who stated that he understood the charges and that he was guilty of the offenses. (Id., Doc. No. 51 at 4-7, 10: Plea Tr.). Petitioner affirmed that he understood that if his sentence were more severe than he expected, he would not be able to withdraw his plea. (Id. at 8). The Government reviewed the terms of the plea agreement, including the parties' agreement that U.S.S.G. § 2D1.1(b)(1) applied, that Petitioner had read and stipulated to the factual basis, and that Petitioner was waiving the right to contest his conviction or sentence. (Id. at 11-14). Petitioner affirmed that he had reviewed the terms of the plea agreement with his attorney and that he understood and agreed to those terms. (Id. at 14-15). The Court also asked, "Is that your signature that appears on the plea agreement?" (Id. at 15). Petitioner responded, "Yes, sir." (Id.). Petitioner iterated that he had read, understood, and agreed to the factual basis. (Id. at 16). Petitioner affirmed that

3

no one had threatened, intimidated, or forced him to plead guilty and that no one had promised him leniency or a light sentence to induce him to plead guilty. (Id. at 16-17). Petitioner stated that he had had sufficient time to discuss any possible defenses with his attorney and that he was satisfied with his attorney's services. (Id. at 17). The magistrate judge accepted Petitioner's guilty plea, finding that he made it knowingly and voluntarily. (Id. at 18-19).

A probation officer issued a draft presentence report, recommending that Petitioner be sentenced at a base offense level of 32, based on the amount of drugs involved in the offense; that he receive a two-level enhancement for possessing firearms; and that he receive a two-level enhancement for maintaining a premises for manufacturing or distributing a controlled substance. (Id., Doc. No. 28 at ¶¶ 16-18: Draft PSR). Allowing a three-level reduction for acceptance of responsibility, Petitioner's total offense level was 33. (Id. at ¶¶ 24-26). The probation officer found that, with a criminal history category of I, Petitioner's applicable guideline range was 135-168 months of imprisonment. (Id. at ¶¶ 44, 69).

The Government filed a sentencing memorandum, asserting that the base offense level should be 36 given the laboratory reports provided during discovery that identified Ice and actual methamphetamine. (Id., Doc. No. 30 at 1). Defense counsel objected to the PSR, arguing that the two-level enhancement for maintaining a premises should not apply because the storage of methamphetamine was incidental and reserving his right to argue that the safety valve should apply and that he should receive a downward variance. (Id., Doc. No. 31: Objection to PSR). The final PSR recommended a base offense level of 36, based on the offense involving 1.9 grams of Ice and actual methamphetamine. (Id., Doc. No. 32 at ¶ 17). This increased the guideline range to 210-262 months of imprisonment. (Id. at ¶ 70).

4

Defense counsel filed a sentencing memorandum, asserting that Petitioner was a wonderful husband and father and a generous man and citing support letters from numerous different individuals. (Id., Doc. No. 37 at 2-3). He also noted that Petitioner suffered from hypertension, that his parents had died at an age similar to his, and that he had forfeited nearly everything he owned. (Id. at 3). Counsel argued that the enhancement for maintaining a premises for distribution should not apply because the factual basis did not support a finding that Petitioner distributed drugs from that location and that any drug storage was an incidental use of the property where he lived. (Id. at 3-4). Alternatively, counsel argued that the Court should vary downward because the enhancement was rarely applied and fell outside the heartland of conduct intended to be punished by the Guidelines. (Id. at 4-5). Counsel also asserted that Petitioner should receive the benefit of the safety valve because there was no evidence that the firearms found at Petitioner's house were used or kept in relation to narcotic transactions. (Id. at 5-6). Finally, counsel argued that the Court should vary downward to a sentence under the regular methamphetamine guidelines, rather than the guidelines for high quality methamphetamine, as well as based on Petitioner's health and his attempt to cooperate. (Id. at 6-12). Defense counsel noted that this was not a triable case, as the officers had executed a valid warrant and Petitioner had provided a video-taped confession after being Mirandized, but counsel contended that Petitioner's original counsel should have negotiated a plea agreement before the arrival of the lab results from the drugs.[1] (Id. at 7-8).

At sentencing, this Court noted that there had been no objections to the magistrate judge's findings that Petitioner's guilty plea was knowingly and voluntarily made, and the Court adopted this finding. (Id., Doc. No. 52 at 2: Sent. Tr.). The parties again stipulated that the

---

[1] Attorney Peter Adolf represented Petitioner for a month.

Court could rely on the factual basis. (Id.). Petitioner told the Court that he had read and understood the PSR and had had sufficient time to review it with his attorney. (Id. at 3). Through counsel, Petitioner again argued, as he had in the objection to the PSR, that the enhancement for maintaining a premises should not apply. (Id. at 3-6).

This Court overruled the objection, finding that a confidential informant had purchased drugs at the house and that Petitioner had admitted receiving trafficking quantities of cocaine and methamphetamine at his house on a monthly basis. (Id. at 8-10). Defense counsel then again argued that Petitioner qualified for the safety valve, asserting that the application of the firearm enhancement involved a different burden of proof. (Id. at 10-12). The Court found that the Government had established Petitioner's possession of a firearm in connection with his drug offenses and determined that he was not eligible for the safety-valve adjustment. (Id. at 14-15). The Court noted that it had read the letters in support of Petitioner and understood him to be generous and kind and a great neighbor. (Id. at 16). Several people spoke on Petitioner's behalf, including Petitioner's wife, who testified that he was a good provider and father. Defense counsel then argued that Petitioner should receive a lower sentence due to the higher offense levels involved with high purity methamphetamine, as compared to other types of methamphetamine and other types of drugs. (Id. at 16-22). The Court imposed a 210-month sentence, noting that although Petitioner had exhibited good traits, there was "a predominance here of evil," that Petitioner had not learned from his prior convictions, and that the community needed to be protected. (Id. at 34-35).

Petitioner appealed, arguing that his attorney had provided ineffective assistance by not objecting to the indictment and by allowing Petitioner to plead guilty to a conspiracy charge that did not identify a co-conspirator. United States v. Helms, 689 F. App'x 738, 738 (4th Cir. 2017).

The Fourth Circuit declined to review this issue, finding that the record did not conclusively establish ineffective assistance, and dismissed his appeal. Id.

Petitioner timely filed the present motion to vacate a year later. He contends that both his trial and his appellate counsel provided ineffective assistance, and he also asserts a claim of cumulative error. (Doc. No. 1 at 4-8, 17-27). The Government filed a response on August 20, 2018. (Doc. No. 3).

Petitioner seeks an evidentiary hearing and the appointment of counsel to better develop his claims. See (Doc. No. 1 at 19, 23-24). For the following reasons, both requests are denied. First, as to Petitioner's request for an evidentiary hearing, a Section 2255 petitioner's claims may be dismissed without an evidentiary hearing where the parties' submissions conclusively show that the petitioner is not entitled to relief. See Raines v. United States, 423 F.2d 526, 531 (4th Cir. 1970) (stating that it is within the district court's discretion to deny a motion to vacate without an evidentiary hearing where the allegations are conclusory or palpably incredible). Here, because the parties' submissions conclusively show that Petitioner is not entitled to relief, he is not entitled to an evidentiary hearing.

Next, as to Petitioner's request for appointment of counsel, there is no right to counsel in a § 2255 proceeding, and Petitioner has failed to show that the "interests of justice" require that he be appointed counsel where his claims of ineffective assistance are without merit. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); 18 U.S.C. § 3006A(a)(2)(B); United States v. Riley, 21 F. App'x 139, 141 (4th Cir. 2001).

II. **STANDARD OF REVIEW**

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior

proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. As discussed above, after examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines, 423 F.2d at 529.

### III. DISCUSSION

**A. Petitioner's Claims of Ineffective Assistance of Counsel.**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

8

would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks.  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

When a defendant pleads guilty, he waives all non-jurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010).  A defective indictment is not a jurisdictional defect.  See United States v. Cotton, 535 U.S. 625, 630-31 (4th Cir. 2002); United States v. Little, 455 F. App'x 362, 363 (4th Cir. 2011) (holding defendant waived challenge to defect in indictment by pleading guilty). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea.  See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983).  A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

1. **Petitioner's Claim that Counsel was Ineffective for Failing to Challenge the Indictment.**

Petitioner first argues that he had a breakdown in communication with his attorney because his attorney would not challenge the indictment on the basis that it failed to allege an essential element of the offense. (Doc. No. 1 at 17-18). Specifically, he contends that because he was charged with conspiracy the indictment had to allege the identity of at least one co-conspirator. (Id. at 18-19, 22). Petitioner argues that because counsel failed to object to the indictment, "the outcome of this case would have been different and Petitioner would have insisted on going to trial." (Id. at 19).

Petitioner's assertion that he argued with his attorney regarding whether the indictment was sufficient indicates that he was aware of this issue before pleading guilty, but that he chose to proceed with his plea. Moreover, at the plea hearing, he testified that he had had sufficient time to discuss any potential defenses with his attorney, was satisfied with his attorney's representation, and was guilty of the offenses. (Crim. Case No. 3:15-cr-251-RJC-DCK-1, Doc. No. 51 at 10, 17). He may not now contradict this sworn testimony. Accordingly, his assertion that his attorney provided ineffective assistance by not challenging the sufficiency of the indictment is dismissed as waived by his guilty plea. See Fields, 956 F.2d at 1294-96.

Even if Petitioner could challenge his attorney's failure to argue that the indictment was defective for failing to identify a co-conspirator, this argument is without merit. An indictment must provide a defendant with sufficient notice of the charge against him so he can defend against it and plead acquittal or conviction if any subsequent attempt is made to prosecute him for the same offense. United States v. Smith, 44 F.3d 1259, 1263-64 (4th Cir. 1995). It is generally sufficient if an indictment follows the words in the statute. Id. at 1264. "A count may allege that the means by which the defendant committed the offense are unknown . . . ." FED. R. CRIM. P. 7(c)(1).

Petitioner's indictment provided adequate notice of the conspiracy charges, including the essential facts constituting the offense charged. To establish a drug-trafficking conspiracy under § 846, the government must prove that (1) the defendant entered into an agreement with one or more persons to engage in a controlled substance offense; (2) the defendant knew about the conspiracy, and (3) the defendant knowingly and voluntarily participated in the conspiracy. United States v. Howard, 773 F.3d 519, 525 (4th Cir. 2014). Here, the indictment charged that Petitioner knowingly and intentionally agreed with other persons to possess with intent to distribute methamphetamine and cocaine, which was sufficient. See (Crim. Case No. 3:15-cr-251-RJC-DCK-1, Doc. No. 1: Indictment).

It is well established that an indictment charging conspiracy is not insufficient simply because it charges that the defendant conspired with unnamed co-conspirators. See, e.g., Rogers v. United States, 340 U.S. 367, 375 (1951) (recognizing "at least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown"); United States v. Thomas, 348 F.3d 78, 83-84 (5th Cir. 2003) (upholding sufficiency of conspiracy charge in indictment where indictment failed to identify a co-conspirator by name); United States v. Pitt, 1999 WL 25552, at *8 (4th Cir. Jan. 22, 1999) (unpublished) (holding that where there is "sufficient circumstantial evidence of the existence of a conspiracy, and of the defendant's involvement in that conspiracy . . . it is not necessary that other members of the conspiracy be named in the indictment or otherwise identified"). Accordingly, Petitioner's counsel was not deficient for failing to object to the indictment on this basis—particularly where Petitioner's own admissions showed that he had been conspiring with his source of supply for approximately 20 years. See (Crim. Case No. 3:15-cr-251-RJC-DCK-1, Doc. No. 32 at ¶ 11).

Nor can Petitioner show prejudice where it would not have been objectively reasonable for him to proceed to trial given that he admitted to the conduct at the time of his arrest, and he points to no contemporaneous evidence that he did not want to plead guilty. See Lee v. United States, 137 S. Ct. 1958, 1967 (2017); United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).

In sum, this first claim of ineffective assistance of counsel is waived by Petitioner's guilty plea and is, in any event, without merit.

### 2. Petitioner's Claim that Counsel was Ineffective at Sentencing.

Petitioner next argues that counsel should have objected to the four-level increase in his base offense level due to the offense involving Ice because there was no evidence to support this finding. (Doc. No. 1 at 24-27). He also contends that counsel promised to seek a downward variance based on Petitioner's family ties and health. (Id. at 26). Petitioner argues that counsel assured him in writing that he would receive a reasonable sentence, but the 17-year sentence that the Court imposed was greater than necessary to comply with the goals of sentencing. (Id. at 26-27).

To establish ineffective assistance of counsel at sentencing, a petitioner must show that, but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence. See Royal v. Trombone, 188 F.3d 239, 249 (4th Cir. 1999). Petitioner's contention that there was no evidence to support the base offense level based on Ice is incorrect. The base offense level was based on laboratory reports of the composition of the drugs found at Petitioner's home. (Crim. Case No. 3:15-cr-251-RJC-DCK-1, Doc. No. 32 at ¶ 10). Petitioner offers no basis on which to contest these reports. Petitioner also incorrectly states that counsel did not seek a variance based on Petitioner's family ties and health. Defense counsel did, in fact, argue for a downward variance, citing in part Petitioner's family and his

12

health concerns, which also were documented in submissions to the Court. (Id., Doc. No. 37 at 10-11; Doc. No. 52 at 32).

Finally, Petitioner offers no evidence of a written representation by counsel regarding his sentence, but, even if he had offered such evidence, the sentence this Court imposed was reasonable. It was at the bottom of the applicable guideline range, and it accounted for the sentencing factors under 18 U.S.C. § 3553(a), including Petitioner's prior criminal conduct and the extensive duration and quantity of his drug-trafficking activities. Accordingly, Petitioner has not shown deficient conduct by counsel at sentencing, nor has he shown that there is a reasonable probability that he otherwise would have received a lower sentence. See Royal, 188 F.3d at 249.

In sum, this second claim of ineffective assistance of counsel is without merit.

### 3. Petitioner's Claim that Appellate Counsel was Ineffective.

Petitioner next asserts various arguments for why appellate counsel was ineffective. Courts should ordinarily only find ineffective assistance for failure to raise claims on appeal when "ignored issues are clearly stronger than those presented." Smith v. Robbins, 528 U.S. 259, 288 (2000) (internal citation and quotation omitted). Appellate counsel is not required to assert all non-frivolous issues on appeal. Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). Rather, "it is the hallmark of effective appellate advocacy" to winnow out weaker arguments and to focus on more promising issues. Smith v. Murray, 477 U.S. 527, 536 (1986). Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). Additionally, the petitioner still bears the burden to show that there is a reasonable probability that but for counsel's failure to raise an issue on appeal, the result of the proceeding would have been different, i.e., he would have prevailed on appeal. See Robbins, 528 U.S. at 285-86.

13

Petitioner first contends that appellate counsel should have argued that there was no evidence to support the finding that his offense involved Ice. (Doc. No. 1 at 24-25). As discussed above, counsel was not ineffective for failing to challenge this finding where it was supported by laboratory reports. See (Crim. Case No. 3:15-cr-251-RJC-DCK-1, Doc. No. 32 at ¶ 10). Petitioner also vaguely alleges that the plea agreement was improperly signed on his behalf, but this is belied by his testimony at the plea hearing that it was his signature on the plea agreement. See (Id., Doc. No. 51 at 15). Additionally, Petitioner fails to relate this to his claim of ineffective assistance on appeal.

Petitioner also argues that his appellate attorney should not have raised ineffective assistance of counsel on direct appeal because the record on this issue was not fully developed. (Doc. No. 1 at 19-23). Petitioner has made no showing that raising this challenge fell below an objective standard of reasonableness or that he was prejudiced by the Fourth Circuit's finding that this issue should be raised, if at all, in a § 2255 proceeding.

In sum, Petitioner's claims of ineffective assistance on appeal are without merit.

### 4. Petitioner's Claim of Cumulative Error.

As his final claim, Petitioner asserts that the combined effect of counsel's alleged errors deprived him of the opportunity to subject the Government's case to adversarial testing. (Doc. No. 1 at 23-24). Petitioner has not shown, however, that any of his claims of ineffective assistance have merit, and, even if he could, claims of ineffective assistance of counsel must be evaluated individually, not cumulatively. Fisher v. Angelone, 163 F.3d 835, 85-53 (4th Cir. 1998). Therefore, this final claim is denied.

### IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: September 7, 2018

Robert J. Conrad, Jr.
United States District Judge